UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-499

| | |
|---|---|
| **SHERILYN M. CAMPUSANO,** | ) |
| Plaintiff, | ) |
| Vs. | ) ORDER |
| **NANCY A. BERRYHILL,** | ) |
| **Acting Commissioner of Social Security,** | ) |
| Defendant. | ) |

**THIS MATTER** is before the court on plaintiff's (#11) and defendant's (#13) cross Motions for Summary Judgment. The matter is ripe for review. Having carefully considered each motion and reviewed the pleadings, the court enters the following findings and Order.

### FINDINGS AND CONCLUSIONS

**I.    Administrative History**

Plaintiff filed applications for a period of disability and disability insurance benefits under Title II of the Act on December 29, 2012, alleging an onset date of August 14, 2012 (Tr. 11, 152-55). The Commissioner denied plaintiff's applications initially and upon reconsideration. (Tr. 61-89). At plaintiff's request, Administrative Law Judge Valorie Stefanelli ("the ALJ") held a hearing on her claims on May 12, 2016. (Tr. 34-60). After considering the hearing testimony and all of the evidence of record, on June 7, 2016, the ALJ issued a written decision finding that plaintiff was not disabled within the meaning of the Act. (Tr. 8-21). The Appeals Council denied plaintiff's request on June 20, 2017, rendering the ALJ's decision the final decision of the Commissioner.

(Tr. 1-6). Having exhausted her administrative remedies, plaintiff commenced this action under 42 U.S.C. § 405(g), seeking judicial review of that decision.

## II.     Factual Background

The court adopts and incorporates the ALJ's factual findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, supra.

Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. Hays v. Sullivan, supra. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the relevant exhibits contained in the extensive administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. Here, the court finds that the ALJ's decision was supported by substantial evidence, and it will thus be affirmed.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title XVI pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d.  If, upon determining residual functional capacity ("RFC"), the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e.  If an individual's RFC precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)-(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

**C. The Administrative Decision**

At step one of the sequential evaluation, the ALJ found that plaintiff has not engaged in substantial gainful activity since August 14, 2012, the alleged onset date, through her date last insured of December 31, 2015. (Tr. 13). At step two, the ALJ found that plaintiff has the following severe impairments: multiple sclerosis, anxiety, depression, and migraines. (Tr. 13). At step three, the ALJ found that none of plaintiff's medically determinable impairments, singly or in combination with each other, meets the severity of an impairment in the Listing. (Tr. 13-14).

Then, before step four, the ALJ found that plaintiff had the RFC to perform light work, with the following exceptions and restrictions: simple, routine, repetitive tasks, with only occasional decision-making, occasional changes to work duties, no requirement to climb ladders, ropes, or scaffolds, no concentrated exposure to extreme temperatures, hazards such as heights, or

dangerous equipment, no commercial diving, and only casual, non-intense contact with others necessary to perform work duties. (Tr. 15).

At step four, the ALJ found that plaintiff's RFC prevents plaintiff from performing any past relevant work through her date last insured. (Tr. 19). At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff could have performed, including office helper, photocopy machine operator, and linen room attendant. (Tr. 20). As a result, the ALJ concluded that plaintiff was not disabled within the meaning of the Act from the alleged onset date through the date last insured. (Tr. 20-21).

**D. Discussion**

The court has closely read plaintiff's memorandum (#12) supporting her Motion for Summary Judgment (#11). Plaintiff argues that the ALJ erred in two ways: by improperly relying on testimony from a vocational expert ("VE") that conflicted with job qualifications in the Dictionary of Occupational Titles ("DOT"), and by failing to perform a proper function-by-function analysis of plaintiff's mental RFC. The court will consider each allegation in turn.

*a. The ALJ's reliance on VE testimony*

Plaintiff argues that the ALJ failed to properly inquire on certain alleged inconsistencies between the VE's testimony and the DOT. First, plaintiff argues that the ALJ wrongly concluded plaintiff could perform a medium-exertion level job, despite plaintiff's limitation for light work. After reviewing the record and the DOT, the court agrees that the ALJ erred by relying on the job of linen room attendant, as the DOT classifies it as a medium exertional level job. As the ALJ found that plaintiff must be limited to light work, this is a clear conflict. However, this is not necessarily reversible error, as the ALJ also found other jobs existed in significant numbers in the

national economy that plaintiff could perform.

As for those other jobs, plaintiff argues that, while the ALJ limited plaintiff to casual, non-intense contact with others, the remaining potential jobs offered by the VE and relied upon by the ALJ all require high levels of contact with others. Plaintiff cites to *O\*Net*, a database offered by the Department of Labor that provides statistics on particular aspects of jobs, and a resources that plaintiff argues has replaced the DOT. Plaintiff argues that *O\*Net's* statistics show that office helpers have contact with others half the time or more, and 99% work with others in a group or team; photocopy machine operators have lesser but similar numbers. As a result, plaintiff contends that an apparent conflict exists between the proposed jobs and the limitations set by the ALJ.

However, while plaintiff claims that *O\*Net* replaced the DOT, that appears to be not completely accurate, as the DOT remains a source of reliable job information for determining disability claims and is suitable for administrative notice. 20 C.F.R. § 404.1566(d); 20 C.F.R. Part 404 Subpart P, App. 2, § 200.00(b); Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) (in making disability determinations, the DOT is the primary source, as well as its companion publication, the SCO). But even if *O\*Net* statistics were eminently reliable, the amount of time spent in contact with others at a job says nothing about whether such contact is casual or more stressful, and thus fails to create an apparent conflict necessitating further explanation from the ALJ. This is especially true given that the VE expressed no confusion as to what "casual, non-intense contact" meant for plaintiff, and plaintiff did not object to the question posed in those terms at her hearing. Williams v. Comm'r of Soc. Sec., 2015 WL 2354563, at *6 (N.D.W.Va. 2015) (quoting White v. Colvin, 2013 WL 4026921, at *3 (D. Md. 2013) (rejecting argument that ALJ erred by not further defining a functional limitation in a hypothetical because

claimant did not object to the question at the hearing and the VE did not indicate confusion about its meaning)). The court also notes that the VE relied upon in this matter did not base her reasoning solely on the DOT, but also on her own experience, training, education, research from other published VEs, and other government documents. (Tr. 59). At any rate, the court cannot find that there was an apparent conflict with the DOT that the ALJ failed to inquire about. Each of these jobs exist in significant numbers in the national economy, with 335,000 office helper jobs and 35,000 photocopy machine operator jobs; either job would be sufficient for the ALJ to rely upon at step five. See Cogar v. Colvin, 2014 WL 1713795 (W.D.N.C. 2014) (holding that 35,000 jobs in the national economy accounted for sufficient numbers). As such, the court finds that the ALJ did not commit reversible error on this basis.

### b. *The ALJ's analysis of plaintiff's RFC*

Next, plaintiff argues that the ALJ erred in his analysis of plaintiff's mental RFC. First, plaintiff argues that the ALJ failed to make a proper finding on plaintiff's ability to stay on task. Plaintiff contends that, while the ALJ found plaintiff has moderate difficulties in maintaining concentration, persistence, or pace, the ALJ failed to account for plaintiff's ability to stay on task for a full work day or work week. In doing so, plaintiff contends that the ALJ committed reversible error, as the capability to perform simple, routine, repetitive tasks is not the same as the ability to stay on task. See Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015).

After closely reviewing the record, the court does not agree that the ALJ committed reversible error here. First and foremost, the Fourth Circuit explicitly declined to adopt a clear rule in Mascio, holding instead that remand "may be appropriate" where the ALJ does not address conflicting evidence as to the claimant's RFC. Mascio, 780 F.3d at 637. Specifically, the Fourth

Circuit found that, absent an explanation of the basis of the ALJ's conclusions, the courts are "left to guess" at how the ALJ arrived at them. Id.; see also White v. Colvin, 2016 WL 3381265, at *5 (W.D.N.C. 2016) (holding that Mascio "only requires a remand when an ALJ's opinion is 'sorely lacking' in a manner that 'frustrates meaningful review'").

Here, that is not the situation, as the court does not have to guess at how the ALJ arrived at her conclusions as the ALJ's analysis and explanations were thorough and did not frustrate meaningful review. The ALJ discussed and reviewed plaintiff's limitations with focus, attention, and concentration and continued the review into her RFC analysis, where the ALJ summarized related medical records, all of plaintiff's assertions, and discussed the consistencies and conflicts between them and where she ultimately fell on the issue. (Tr. 14-19). Indeed, the ALJ actually gave more weight to plaintiff's assertions than a State agency physician did and provided an appropriate accommodation where one may not have been explicitly necessary. (Tr. 18). In doing so, the court finds that the ALJ has supported her decision with substantial evidence, as required by law. Richardson, 402 U.S. at 390; Hays, 907 F.2d at 1456. Ultimately, the court finds that such a ruling does not conflict with the holding in Mascio. See Smith v. Berryhill, 2017 WL 4295224 (W.D.N.C. 2017) (affirming an ALJ's RFC finding that included only simple, repetitive, routine tasks to accommodate moderate limitations in concentration, persistence, or pace); Straite v. Berryhill, 2017 WL 4052170 (W.D.N.C. 2017) (affirming an ALJ's RFC finding that included only unskilled work to accommodate moderate limitations in concentration, persistence, or pace); Darby v. Berryhill, 2018 WL 310136, at *6 (W.D.N.C. 2018) (holding that there is not a "hard and fast rule as to what RFC limitations sufficiently address a plaintiff's moderate limitation in concentration, persistence, or pace" and that "a limit to simple, routine tasks or unskilled work in

the face of moderate limitation in concentration, persistence, or pace may suffice, even under Mascio").

Finally, plaintiff argues that the ALJ failed to provide a detailed assessment of plaintiff's difficulties in social functioning and their impact on her ability to engage in sustained work activities. Plaintiff again argues that the ALJ should have explained what was meant by "casual, non-intense contact with others." (Tr. 15). Further, plaintiff contends that the ALJ's failure to determine plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors is harmful error.

As discussed earlier, the court cannot find that the ALJ committed reversible error in failing to elaborate on what "casual, non-intense contact with others" specifically meant. It is utterly impractical to expect the ALJ to exhaustively explain the meaning of every single term she used throughout the process, especially where those terms are not terms of art, but have an everyday meaning. Here, when the ALJ used the term in a hypothetical, neither plaintiff nor plaintiff's counsel objected to the term's use and the VE did not express any uncertainty as to what the term meant. As such, the court finds no reversible error on this basis. See Williams, 2015 WL 2354563 at *6 (quoting White, 2013 WL 4026921 at *3). Further, plaintiff's argument that the ALJ failed to fully elaborate on plaintiff's ability to receive instructions and criticism from supervisors is unavailing, particularly since plaintiff has not even attempted to argue that plaintiff would be incapable of receiving instructions and criticism from supervisors. Again, the ALJ was quite thorough in her analysis of the evidence of record and in explaining her reasoning behind the limitations she assigned to plaintiff. Her decision is supported by substantial evidence, and if the ALJ did not explicitly articulate every conceivable aspect of plaintiff's ability to work word-by-

word, that is not reversible error. See Tanner v. Comm'r of Soc. Sec., 2015 WL 574222, at *5 (4th Cir. 2015) (holding that reversal would be pointless, in part because "it is highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability"); see also Shinseki v. Sanders, 556 U.S. 396, 407-10 (2009); Bryant v. Colvin, 571 F. App'x. 186, 190 (4th Cir. 2014), cert. denied, 135 S.Ct. 727 (2014) (finding harmless errors in the decision, but declining to overrule the ALJ's determinations because they were supported by substantial evidence).

### E. Conclusion

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's complaint, the cross Motions for Summary Judgment, and accompanying memoranda. Review of the entire record reveals that the decision of the ALJ was supported by substantial evidence. See Richardson v. Perales, supra; Hays v. Sullivan, supra. As this court finds that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra at 401, plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

### ORDER

**IT IS, THEREFORE, ORDERED** that plaintiff's Motion for Summary Judgment (#11) is **DENIED**, the Commissioner's Motion for Summary Judgment (#13) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

Signed: March 30, 2018



Max O. Cogburn Jr.
United States District Judge